In the report and petition of William H. Kelly and J. Ashley Brown, trustees of the Fidelity Union Title and Mortgage Guaranty Company as of the close of business on October 31st, 1934, instructions of the court were requested touching the disposition of certain amortization payments made to the trustees upon mortgages against which guaranteed first mortgage certificates had been issued. An issue was raised by reason of the fact that the mortgage company had issued so-called short term certificates against some mortgages. Counsel for the estate of Grace Fryer, the claimant *Page 153 
here, conceived that its claim was within the class of claims arising out of the issuance of short term certificates touching which instructions had been asked, and filed affidavits and a memorandum in support of its claim upon that theory, but it is not. The claim is one with respect to which, however, the trustees are entitled to instructions of the court. The facts are not in substantial dispute, although the full facts are not contained in any affidavits or pleadings filed in this controversy, but have been obtained by the court from a consideration of such pleadings as have been filed and an examination of the records of the company and from informal discussion with the trustees and their counsel. The manner in which this controversy has been submitted to the court has caused it unnecessary labor and delay and is disapproved. Except that the facts about to be recited are not in substantial dispute a reference to a master would be necessary.
The mortgage company held a mortgage in the principal sum of $7,400, due on April 1st, 1933. Against this mortgage it issued four guaranteed first mortgage certificates, one of which, in the sum of $4,000, was issued to Grace Fryer in her lifetime. Three other certificates, two of $1,200 each and one of $1,000, were issued to three other investors, and all four of these certificates were outstanding on the due date of the mortgage. Prior to that date application for an extension of the due date for a period of three years was made by the mortgagor to the mortgage company. The mortgage was not then in default. The mortgage company communicated with the several owners of certificates in this mortgage and all, with the exception of Grace Fryer, consented to the extension as requested. Grace Fryer did not consent to the proposed extension until she was assured by the company that she would receive certain amortization payments of $200 each due October 1st, 1933, and at the end of each six months' period thereafter, and the balance of her certificate upon the mortgage due date as extended. The mortgage was extended accordingly. No new mortgage certificates were issued, but a renewal certificate in the following form was given to Grace Fryer: *Page 154 
 "RENEWAL
To be filed with the Original Certificate. Number M-73370-4. Held in name of Grace Fryer.
In accordance with your authorization, we have renewed your investment in the above Guaranteed First Mortgage Certificate for $4,000.00. See reverse side from April 1, 1933, maturing April 1, 1936, at the net rate to you of 5 1/2% per annum. Premises 132-4 Westfield Avenue, Roselle Park, N.J.
The guaranty of the company, contained in your original Certificate, remains the same with the modifications above mentioned, and such modifications as have been or may be imposed by the Commissioner of Banking and Insurance of New Jersey.
Dated Apr. 1, 1933.
 FIDELITY UNION TITLE AND MORTGAGE GUARANTY COMPANY. By Joseph L. Weinert, Assistant Secretary."
On the reverse side of the certificate the following was typewritten:
"Note:
It is understood that the payment of the principal may be anticipated as follows:
 $200.00 on or after October 1, 1933 200.00 on or after April 1, 1934 200.00 on or after October 1, 1934 200.00 on or after April 1, 1935 200.00 on or after October 1, 1935 200.00 on or after April 1, 1936."
Similar renewal certificates were issued to each of the other investors in this mortgage without, however, any mention therein of amortization payments. Prior to the appointment of the trustees of the mortgage company, one of the amortization payments had been made and remitted to Grace Fryer or her representative. Two other amortization payments have since been made and are held by the trustees pending instructions as to their disposition. As the other investors in this mortgage had no notice of the arrangement for payment of amortization payments to Grace Fryer their rights are not affected by it. They are entitled to rely upon the contract with the company as evidenced by its certificate and all certificate holders are entitled to share in the amortization payments pro rata. The New York supreme court so *Page 155 
held in a similar case recently. Matter of Van Schaick, Bond andMortgage Co. v. Levine, reported in the New York Law Journal
for November 27th, 1934.
All guaranteed first mortgage certificates issued against the mortgage here involved contain the following provision:
"D. In the event of payment of a part of the principal sum secured by said mortgage the company shall have the right to retire any certificate to an equivalent amount or to hold the amount so paid for the benefit of the holders of all the certificates of said mortgage."
But irrespective of the effect of this paragraph upon the rights of the respective investors it is obvious that it has no application here as there was no certificate outstanding of "an equivalent amount" which could have been retired by any of the amortization payments. The trustees are instructed to distribute the amortization payments amongst the respective holders of certificates in the mortgage pro rata.